UTZURRUM LAW OFFICES, A.P.C.
Joe Utzurrum, Esq.
7 Waterfront Plaza
500 Ala Moana Boulevard, Suite 400
Honolulu, Hawai'i 96813
Tele 808.587.7070
Email joe@ulawoffices.com

11620 Wilshire Blvd., Suite 900
Los Angeles, California 90025
Tele 310.887.1837

Attorneys for Plaintiff, DANNY
GALLAGHER

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| DANNY GALLAGHER, | ) CIVIL NO.: 1:19-cv-01459 |
| | ) |
| Plaintiff, | ) COMPLAINT FOR DAMAGES |
| | ) AND DEMAND FOR JURY TRIAL |
| vs. | ) |
| | ) 1. Libel |
| EMILEE SALDAYA, RACHAEL | ) 2. Libel Per Se |
| AUGHENBAUGH, | ) 3. Trade Libel |
| | ) 4. False Light |
| Defendants. | ) 5. Intentional Infliction of |
| | )    Emotional Distress |
| | ) 6. Negligent Infliction of Emotional |
| | )    Distress |
| | ) 7. Permanent Injunction |
| | ) 8. Declaratory Relief |
| | ) |

Plaintiff, DANNY GALLAGHER, an individual, hereby, by and through

1

its counsel of record, allege as follows:

### I.JURISDICTION AND VENUE

1.   This court has original jurisdiction under 28 U.S.C. §1332, because all plaintiff is a citizen of the state of Hawai'i and all defendants are citizens of the state of Colorado.  Additionally, the amount in controversy in this matter exceeds $75,000.00, exclusive of costs and interests as more specifically plead *infra*.

2.   Venue is proper under 28 U.S.C. §1391(b)(1), because all defendants reside in the Federal District of Colorado.

### II.PARTIES

3.   Plaintiff, DANNY GALLAGHER (**Gallagher** or **Plaintiff**) is, and was, at all times relevant, domiciled in Hawai'i and thus a citizen of Hawai'i.

4.   Defendant, Emilee Saldaya (**SALDAYA**), sometimes using the identity Emily Benner and Emilee Saldaya is, and was at all relevant times, domiciled in the State of Colorado and thus a citizen of the State of Colorado.

5.   Defendant, Rachael Aughenbaugh (**AUGHENBAUGH)**, named and referred to in the prior complaints as, "Rachael Brown", sometimes using the name "Rachael Phoenix", "Rachael BirthKeeper Phoenix" and Rachael Brown is, and was at all relevant times, domiciled in the State of Colorado and thus a citizen of the State of Colorado.

6.   The full extent of the facts linking the fictitiously named designated defendants with the claims alleged herein is unknown to plaintiff, or the true names and/or capacities, whether an individual, plural, corporate, a partnership, an associate, or otherwise, of defendants, DOES 1 through 10, inclusive, are unknown to plaintiff.  Plaintiff therefore sues defendants by such fictitious names.  Plaintiff is

Complaint and
Demand for Jury Trial

informed and believe, and thereon alleges that each of the defendants designated herein as a DOE is negligently, wantonly, recklessly, tortiously, intentionally, strictly and unlawfully responsible in some manner for the events and happenings herein referred to, and did negligently, wantonly, recklessly, tortiously, intentionally, strictly and unlawfully proximately cause injuries and damages thereby to plaintiff, as herein alleged.  Plaintiff will amend this Complaint to allege said defendants' true names and capacities when same have been ascertained.  Each reference to "defendant," "defendants," or a specifically named defendant, refers to all defendants including those sued under fictitious names.

7.    At all times herein mentioned, each defendant was the agent, principal, master, servant, employer, employee, partner and joint venturer of the other defendants, and in doing the things hereinafter mentioned, was acting in the scope of his, her, or its authority as such, and with the permission and consent of the other defendants, and each of them.

### III.FACTS COMMON TO ALL CAUSES OF ACTION

32.    Each, and every, defamatory statement described herein has gone "viral"; that is to say that the described defamatory statements have been shared, forwarded, commented on and used hundreds to thousands of times on, and in, the same social media platform the defamatory statement(s) were originally made or posted, and also on, and in, other social media platforms different from the platform in which the defamatory statements were originally made or posted. The viral nature of the defamatory statements and subject matter was of no doing of plaintiff.  Gallagher has made numerous and every reasonable effort to prevent the further dissemination of the lies that

Complaint and
Demand for Jury Trial

have been spread about him, lies that were intended to prevent Gallagher from engaging in his constitutional right to pursue the lawful occupations and professions that he has been engaged in the past few years, including as a photographer and a doula.

33.  The herein unjustifiable acts of the defendants have been as successful as each of the defendants intended, that is to say, that each of the defendant'' acts have irreparably damaged Gallagher's reputation, personal relationships, business relationships, income, emotional well-being, and financial well-being, *inter alia*.

34.  Maternitywise International, LLC (**MatWise**) is a business that promotes the training of persons who want to become doulas, who are persons who provide assistance during the childbirth process. Although no state requires government mandated training or certification, for a large fee MatWise provides "certification" through the completion of its training courses.  MatWise characterizes its "graduates" as "certified" to create and manufacture a public perception that paying for and completing a series of MatWise courses will somehow legitimize its graduates. In fact, there is no government-regulated medical program or any major or minor United States educational institution that offers certification to be a doula, or call oneself a doula. Any person who wants to call himself or herself a doula may do so without regulatory oversight. MatWise and its principals make and enjoy a profit from its perceived regulatory behavior.

35.  On information and belief, the business form of MatWise is a limited liability company.

36.  Anne Croudace (**Croudace**) is a principal of MatWise and has been "certified" through MatWise as a

4

(1) "MaternityWise Certified Labor Doula Trainer"

(2) "MaternityWise Certified PostPartum Doula Trainer"

(3) "MaternityWise Placenta Encapsulation Certification"

(4) "MaternityWise Certified Lactation Support and Educator Trainer"

37.   Croudace conducts business through numerous fictitious business names, including, "Maternity Wise", "Maternity Wise International", "MaternityWise Intl", "MaternityWiseInternational", "Maternity Wise Institute", *inter alia*.

38.   MatWise conducts business through fictitious business names, including, "Maternity Wise", "MaternityWise Intl", "MaternityWiseInternational", "Maternity Wise Institute", *inter alia*.

39.   Croudace and MatWise use the web address http://www.maternitywise.com, the Facebook page https://www.facebook.com/pg/maternitywise.intl/about/?ref=page_internal and various social media discussion groups to market to those intending on become "certified" doulas through its program. Croudace and MatWise reach out to the residents of every state and country, including the State of Hawai'i, to find candidates, i.e., clients and students, for its certification programs that Croudace and MatWise derive income.

40.   In order to lure candidates to paying for its programs and classes, Croudace and MatWise use the fact that they have in the past, and in the future, provided training in Hawai'i and do so to capitalize on the natural beauty and tourism in Hawai'i.

41.   Gallagher exchanged valuable consideration and did undergo the certification program provided by Croudace and MatWise in Hawai'i and did so through Croudace's and MatWise's marketing efforts in the State of Hawai'i.

Complaint and
Demand for Jury Trial

42.    Gallagher operated, and operates, a Hawai'i business in photography and also is employed as a doula.

**A.    Defendants' use of Facebook to target Gallagher in Hawai'i with the knowledge that Gallagher lives and works in Hawai'i.**

43.    Facebook is a social networking website wherein users create a customized profile to connect with other users or visitors by "posting" communications, including photos and documents, for other users to read and review.  As of January 2018 Facebook had more than 2.2 billion monthly active users. All defendants were aware of Facebook's extensive reach and the "viral" effect that defendants' communications could have; in fact each and all herein defendants intended on having their communications "go viral", "viral" meaning that a communication is republished thousands of times in a short period of time.

44.    Herein "users" and "visitors" can be used interchangeably. "Users" of Facebook and Facebook Pages (*infra*) generally refer to Facebook subscribers who have their own personal or Facebook Pages accounts, whereas "visitors" are generally those persons who are not Facebook subscribers. Facebook subscribers' pages that are made "public" can be accessed by any person, whether or not the person has a Facebook account. "Private" Facebook accounts are accessible to those persons who also have a Facebook account, i.e., between users, and consent is given to view the pages associated with the account.

45.    Facebook also allows persons to create a business page through "Facebook Pages".  Facebook represents, *inter alia*, on its creation page that Facebook Pages are used to "[c]reate [a] beautiful online home for your business" and that the pages "[i]ncrease awareness of

your business with a free online presence …", also "[c]reating a Facebook Page allows the more than 2 billion people on Facebook to discover your business – think of your Page as a digital storefront…" and "2/3 of Facebook users across all countries surveyed say they visit the Page of a local business at least once a week."

46. On all dates relevant, including 2018, Gallagher maintained a business page on Facebook called "Danny the Doula", i.e., separate from his personal identity page.

1. **The Danny the Doula and Maternity in Motion Facebook Business Pages are patently operated by a person who lives and works in Hawai'i and directs its business to serve the citizens of Hawai'i or those who desire a Hawaiian themed audio visual product or assisted childbirth in Hawai'i.**

47. The Danny the Doula business page (**DTD**), like many business websites, have subpages that categorize certain aspects of the business, i.e., akin to visiting different departments of a business, that cater to the varying interactive interests of users.

48. The DTD business page has seven subpages, specifically Home, Posts, Reviews, Photos, About, Community and Info and Ads.

49. When interacting with DTD, the Home page is the first page that a user or visitor must interact with before accessing DTD.  The Home page uses Hawaiian words and phrases, for example, "Aloha Kakou", "Mahalo", "Aloha" and lists Gallagher's 808 phone number, communicating, signifying and establishing that Gallagher lives in Hawai'i and that the business is a Hawai'i based business.

50. The DTD business page also directs users and visitors to "[p]lease support me by liking and subscribing to my sister page for all

Complaint and
Demand for Jury Trial

maternity and birth visuals @Maternity in Motion! Mahalo!," including a link to Gallagher's other Facebook Pages (business) site maternityinmotion.

51.   The DTD Home page also has another separate link to www.maternityinmotion.com.

52.   The Maternity in Motion business page (**MIM**) displays Gallagher's audio-visual work and uses such to promote his photography business. MIM has samples of Gallagher's work providing photos and videos of pregnant women immersed in the backdrops of Hawai'i, for example Haleakala, Maui, Makena, Maui, Kihei, Maui, and St. Louis Heights, Oahu. The videos and photographs are overwhelmingly of scenes in Hawai'i that cannot be mistaken as to location because of the express statement of where the photo shoots took place. Gallagher's Hawai'i area code phone number is displayed on every subpage on MIM.

53.   The connection of DTD and MIM are not separable and every person who visited DTD or MIM were fully aware that Gallagher was operating a doula and photography business that was based in the state of Hawai'i and was primarily reaching out to and for the business of Hawaiian citizens or whoever wanted a Hawaiian experience.

2.   **Defendants' knowledge that Gallagher lives and works in Hawai'i by those who interacted with Docker's post on the DTD Reviews page on June 3, 2018 and after.**

54.   After reviewing the Home page of DTD, every defendant herein then visited the DTD Reviews page to post defamatory statements about Gallagher and his businesses.

55.   The "Reviews" page is a page expressly made to review the

business, in the instant case, Gallagher doing business as a doula and photographer through DTD.

56. Each and every defendant was fully aware that a comment, reply, emoji, post, inter alia, on DTD or MIM would affect Gallagher's reputation as a doula and photographer and consequently his photography and doula business.

57. One of the first posted reviews was a post on June 3, 2018 made by Chrystal Docker (**Docker**). Docker defended Gallagher's integrity, transparency and high level of professionalism, including that the below described false accusations made by MatWise and Croudace were false and not supported by any evidence. (attached hereto as Exhibit "1" and incorporated herein by this reference is a true and correct copy of the pertinent part Docker's post defending Gallagher and the following replies. It should be noted however that others might have deleted a reply prior to making the herein copy or otherwise prior to when the DTD was disabled to prevent further libel.)

58. Soon after Docker's positive review, Facebook placed the review above all other reviews so that any and all visitors of DTD would have to first read Docker's review and subsequent posts by others including Docker's statement that Gallagher lived in Hawai'i.

59. Defendant, AUGHENBAUGH, using the identity "Rachael BirthKeeper Phoenix", responded and posted laughing emojis to Docker'S review, acknowledging that AUGHENBAUGH disagreed with Docker's statement.

60. After Docker's post, a person named Maddison Boulter (**Boulter**) sarcastically replied with the question, "[y]ou have personally met him?"

61.   A person named, Channa Jayde Walz (**Walz**), responded and posted a thumbs-up emoji to Boulter's question, thereby apparently approving of the question.

62.   Docker replied to Boulter, "No he is in Hawai'i and I am stateside. But know him from birth group, talking on the phone, chatting online, etc. I've also talked to other people who know him and he has plenty of people backing him up. And most of the people who are coming out against him, don't even know him, have never used his services, etc. They are only going by what they've heard today from these rumors being spread. Very petty, immature and unprofessional."

63.   Immediately after Docker's reply that Gallagher lived in Hawai'i and in the same string of responses to Boulter's sarcastic question, a Facebook user using the identity "Jess Young" (**Young**)  posted a false statement defaming Gallagher, "[m]ost of the women coming out against him HAVE dealt with him ….Victim dismissal is nothing new," although the truth is that with the exception of Croudace, none of the accusers and persons committing defamation ever met Gallagher or have "dealt with him". Young's response in accentuating "HAVE" attempted to directly refute Docker's statement that Gallagher's accusers have met him. As such, Young acknowledges the review of Docker's post, establishing Young's knowledge that Young was aware that Gallagher lived in Hawai'i.

64.   Walz and a Facebook user named Jane Hopaki (**Hopaki**) responded and posted a thumbs-up emoji to Young's defamatory statement, apparently approving of Young's defamation and established knowledge of Docker's statement that Gallagher lived in Hawai'i.

65.   Continuing in the same conversation, Jacob Hildreth, posted a response to the Docker's second post that Gallagher lived in Hawai'i,

Complaint and
Demand for Jury Trial

"[s]o …you don't know him then. First Sentence of your review is a lie." Jacob Hildreth's response established that Jacob Hildreth did read the first sentence of Docker's statement that Gallagher lived in Hawai'i.

66.   Young posted a thumbs-up emoji to Jacob Hildreth's statement acknowledging that Young read the first sentence of Docker's statement that Gallagher lived in Hawai'i and subsequent response by Jacob Hildreth.

67.   Jordan Ashley Hocker (**Hocker**) then posted a direct response to Docker's post of whether Docker ever had a face-to-face meeting with GALLAGHER, "Chrystal Docker You haven't actually met him but you're attempting to say women who had a direct inappropriate experiences are just trying to discredit him by coming forward? …That literally makes no sense."  Hocker apparently acknowledges that Hocker read Docker's second post including the first sentence of Docker's statement that Gallagher lived in Hawai'i.

68.   Young posted a thumbs-up emoji to Hocker's reply.

69.   Defendant, AUGHENBAUGH using the identity "Rachael BirthKeeper Phoenix" then posted, "[s]o sorry he is grooming you too!" which was a derogatory statement directed at Docker who in the string of posts and replies established that Gallagher lived and worked as a photographer and doula in Hawai'i. That is to say, AUGHENBAUGH's statement acknowledges that AUGHENBAUGH was following along and reading Docker's posts including the first sentence of Docker's second post that Gallagher lived in Hawai'i.

70.   "Grooming" becomes a prevalent theme of attacks made upon all those supporting Gallagher, that is to say, all those who support Gallagher have lost all volition to defend against Gallagher's sexually

predatory behavior and the support was without merit expanding the scope of the defamation by discrediting and making factually false any and all positive statements about Gallagher and his photography and doula business.

71.   Young and Walz posted thumbs-up emojis to AUGHENBAUGH's statement.

72.   Continuing in the string of replies, Jennifer Chidester (**Chidester**)**,** posted, "Ok even if you don't believe the handful of women who have come forward about him [meaning Gallagher] making them feel fetishized about him taking partially nude maternity pics but never actually providing the edited photos etc. …" That is to say, Chidester's statement acknowledges that Chidester was following along and reading Docker's posts including the first sentence of Docker's second statement that Gallagher lived in Hawai'i because Chidester's post refuted the content of Docker's post.

73.   Young posted a thumbs-up emoji to Chidester's statement.

74.   Elizabeth Geftakys (**Geftakys**) using the identity "Becca Russell" then posted the entire defamatory memorandum created and prepared by MatWise and Croudace, described below. That is to say, Geftakys' post acknowledges that Geftakys was following along and reading Docker's posts including the first sentence of Docker's second statement that Gallagher lived in Hawai'i. Geftakys' post was not intended to standalone but used to refute Docker's assertions supporting Gallagher.

75.   Young, Chidester and Cara Gwizd (**Gwizd**) posted thumbs-up emojis to Geftakys' statement, thereby acknowledging that Young, Chidester and Gwizd were following along in the conversation including Docker's statement that Gallagher lived in Hawai'i.

Complaint and
Demand for Jury Trial

76.     As such, defendants who participated in the first string of replies that originated from Docker's two posts on June 3, 2018 that established that Gallagher lived and worked as a photographer and doula in Hawai'i were fully aware that Gallagher lived and worked as a photographer and doula in Hawai'i. Specifically, defendant, AUGHENBAUGH, along with Walz, Boulter, Young, Hopaki, Chidester and Gwizd were expressly aware that Gallagher lived and worked as a photographer and doula in Hawai'i when AUGHENBAUGH, Walz, Boulter, Young, Hopaki, Chidester and Gwizd posted defamatory statements about Gallagher.

77.     AUGHENBAUGH was fully aware that her participation in the conversations and defamatory statements were increasing the viral nature of the defamatory statements made about and against Gallagher, i.e., AUGHENBAUGH was stirring the defamatory pot in hopes that the defamation about Gallagher and against Gallagher would increase in reach and severity.

**B.      Defendants' Defamatory Statements**

78.     After reviewing the DTD Home page, every defendant herein then visited the DTD Reviews page to post the above and below described defamatory statements about Gallagher and his businesses.

79.     Defendants also then posted the same defamatory statements on and in Facebook groups that had thousands of members and links to other Facebook groups so that that tens of thousands of members did review the defamatory statements.

80.     Before posting their defamatory statements, every defendant did review the string of posts and replies that extended from Docker's review indicating that plaintiff lived in Hawai'i because Facebook positioned Docker's review and post on the DTD Reviews page as

Complaint and
Demand for Jury Trial

the first review and post as the "most helpful."

81.   Each and every one of the defendants' defamatory post was made after Docker's post that Gallagher lived in Hawai'i and each and every defendant read Docker's post that Gallagher lived in Hawai'i before making the defamatory post described herein.

**1.   Croudace and MatWise**

82.   On, or about, June 5, 2018, Croudace as an individual, and on behalf of the business entity MatWise, prepared then disseminated to defendants, Elizbeth Hopaki (**Hopaki**), Madison Boulter (**Boulter**) and Elizabeth Geftakys (**Geftakys)** and others a "Memorandum of Official Statement" dated 05 June 2018. The Memorandum of Official Statement accused plaintiff, *inter alia*, of (1) furthering and promoting pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (2) being a sexual predator, acting in a manner that, and thereby, violated the ethical and professional practices of doulas and photographers and also violated criminal statutes; (3) enticing others to participate in pornography because of the possibility of financial gain and plaintiff did so in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (4) encouraging pregnant women and others to become involved in selling pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (5) dishonesty in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (6) deceiving the public in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (7) being unethical in his practice as a doula in a manner that, and thereby, violated the ethical

and professional practices of doulas; (8) dishonesty in his profession as photographer in a manner that, and thereby, violated the ethical and professional practices of photographers; (9) deception in his profession as a photographer for plaintiff's sexual gratification, financial gain and self-interest; and (10) unethical conduct in his profession as a photographer in a manner that, and thereby, violated the ethical and professional practices of photographers. (**MatWise's Set of Defamatory Statements**)

### a. Innuendo, Inducement and Colloquium

83. Croudace and MatWise, in other communications with Hopaki, Boulter and Geftakys and in MatWise's Set of Defamatory Statements, did not attempt to prevent or otherwise limit use of, prevent the further publication of MatWise's Set of Defamatory Statements or the content therein, through social media, but instead Croudace and MatWise encouraged the unlimited world wide dissemination of MatWise's Set of Defamatory Statements. Croudace and MatWise have done absolutely nothing to prevent Hopaki, Boulter and Geftakys from referencing and republishing MatWise's Set of Defamatory Statements through social media platforms, including for example Facebook, Twitter and Instagram, since Croudace and MatWise became fully aware of Hopaki's, Boulter's and Geftakys' posting of MatWise's Set of Defamatory Statements on or about June 3, 2018 and posted a thumbs up to each posting of the memorandum.

84. In the two pages that consist of the MatWise's Set of Defamatory Statements, Croudace and MatWise use the word "ɪntegrity" five times; use the word "ethics" three times; use the word "pornography" nine times, use the word "credible" and phrases "sexual predator" and

"excuses in context" each once; and use the words in reference to Gallagher's character and conduct in his personal and professional endeavors. The words are used in a negative manner and used to cast a false light about plaintiff's conduct and character, including in the manner that plaintiff conducts his professions.

85. Croudace and MatWise established credibility in MatWise's Set of Defamatory Statements by indicating that "authorities" are conducting an ongoing investigation targeting Gallagher's conduct and market itself as an organization that has worldwide membership which is apparent from MatWise's website. In fact, no regulatory body or law enforcement agency has undertaken any investigation.

86. MatWise's Set of Defamatory Statements was understood by the thousands of persons who did review MatWise's Set of Defamatory Statements, to mean that Gallagher, *inter alia*, (1) furthered and promoted pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (2) was a sexual predator acting in a manner that, and thereby, violated the ethical and professional practices of doulas and photographers and also violated criminal statutes; (3) enticed others to participate in pornography because of the possibility of financial gain and plaintiff did so in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (4) strongly encouraged pregnant women and others to become involved in selling pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (5) was dishonest in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (6) deceived the public in his practice as a doula for plaintiff's sexual

gratification, financial gain and self-interest; (7) was unethical in his practice as a doula in a manner that, and thereby, violated the ethical and professional practices of doulas; (8) was dishonest in his profession as photographer in a manner that, and thereby, violated the ethical and professional practices of photographers; (9) was deceptive in his profession as a photographer for plaintiff's sexual gratification, financial gain and self-interest; and (10) was unethical in his profession as a photographer in a manner that, and thereby, violated the ethical and professional practices of photographers.

87.    Prior to Croudace and MatWise publishing MatWise's Set of Defamatory Statements, Croudace and MatWise knowingly did absolutely nothing to determine, or otherwise verify the truth of the defamatory statements and negative implications of MatWise's Set of Defamatory Statements and the accusations they leveled against plaintiff.

88.    Prior to publishing MatWise's Set of Defamatory Statements, Croudace and MatWise knew that the accusations were false, however still published MatWise's Set of Defamatory Statements and have since continued to publish MatWise's Set of Defamatory Statements to other persons, on social media, and directly to MatWise's subscribers and clients, family, friends, business acquaintances and persons Croudace and MatWise do not have any prior knowledge, i.e., indiscriminately publishing MatWise's Set of Defamatory Statements to whomever will listen, may use the internet and has the ability to read MatWise's Set of Defamatory Statements, which was, and is, Croudace's and MatWise's intention.

89.    Moreover, Croudace and MatWise have continued, through the present, to outwardly ratify, endorse, approve, consent, confirm and

17

validate the accusations in MatWise's Set of Defamatory Statements to other persons, that is to say, that Gallagher *inter alia*, (1) furthered and promoted pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (2) was a sexual predator acting in a manner that, and thereby, violated the ethical and professional practices of doulas and photographers and also violated criminal statutes; (3) enticed others to participate in pornography because of the possibility of financial gain and plaintiff did so in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (4) strongly encouraged pregnant women and others to become involved in selling pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (5) was dishonest in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (6) deceived the public in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (7) was unethical in his practice as a doula in a manner that, and thereby, violated the ethical and professional practices of doulas; (8) was dishonest in his profession as photographer in a manner that, and thereby, violated the ethical and professional practices of photographers; (9) was deceptive in his profession as a photographer for plaintiff's sexual gratification, financial gain and self-interest; and (10) was unethical in his profession as a photographer in a manner that, and thereby, violated the ethical and professional practices of photographers, including by publishing to its members, subscribers, affiliated persons and any person interested becoming associated with Croudace and MatWise that MatWise's Set of Defamatory Statements "will be

Complaint and
Demand for Jury Trial

available in PDF form on our website at the following URL:

http://www.maternitywise.com/6-5-18StatmementMWI.pdf

90.   It was, is, and has always been, untrue, and false, that plaintiff, *inter alia*, (1) furthered and promoted pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (2) was a sexual predator acting in a manner that, and thereby, violated the ethical and professional practices of doulas and photographers and also violated criminal statutes; (3) enticed others to participate in pornography because of the possibility of financial gain and plaintiff did so in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (4) strongly encouraged pregnant women and others to become involved in selling pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (5) was dishonest in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (6) deceived the public in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (7) was unethical in his practice as a doula in a manner that, and thereby, violated the ethical and professional practices of doulas; (8) was dishonest in his profession as photographer in a manner that, and thereby, violated the ethical and professional practices of photographers; (9) was deceptive in his profession as a photographer for plaintiff's sexual gratification, financial gain and self-interest; and (10) was unethical in his profession as a photographer in a manner that, and thereby, violated the ethical and professional practices of photographers.

91.  After MatWise's Set of Defamatory Statements was published, SALDAYA and AUGHENBAUGH reviewed MatWise's Set of Defamatory Statements. SALDAYA and AUGHENBAUGH did nothing to verify the veracity of the defamatory accusations in MatWise's Set of Defamatory Statements.

### 2.   Defendant, Emilee Saldaya (SALDAYA)

92.  On, or about, June 9, 2018, Paula Brown Ricchi (**Ricchi**) defended Gallagher stating in a Facebook post that Ricchi has known "Danny for many years and have found him to be only honorable, kind, honest, encouraging and uplifting! I would work with Danny in a heart beat no matter what the circumstances!" and "[a]s I have stated, Danny has impeccable integrity: Definition: noun: the quality of being honest and having strong moral principles; moral uprightness."

93.  On or about one week after Ricchi made the positive statement on Facebook about Gallagher, SALDAYA posted the statement on Facebook, to a Facebook group called Free Birth Society Group that had contact and links of tens of the thousands of other persons, thus published the statement on Facebook, and did so with the intent that many others would read the statement and republish the statement to others, "Paula Brown Ricchi Are you supportive of a man being in the birth industry, a lactation consultant, and also grooming pregnant and breastfeeding women to be on porn sites? I would certainly not want my "male doula" or my "male lactation consultant" to also be telling other moms how to lactate for money on porn sites. But to each their own I suppose" and "Paula Brown Ricchi I'm sorry I am a bit confused, does that mean you either haven't seen the proof in which he is caught in the act of doing this, or you have experienced him to be transparent about both infiltrating the birth world and grooming

women for sex work? I'd be happy to share the screen shots the
women have shared off of this review, as screenshots get taken down
here. That's wonderful to meet a woman who knows him personally
that he hasn't made feel extremely uncomfortable, glad to know there
is one out there!" (**SALDAYA's FIRST SET OF DEFAMATORY
STATEMENTS**)

94.   On, or about, June 3, 2018, SALDAYA posted the statement on
Facebook, including to a Facebook group called Free Birth Society
Group that had contact and links of tens of the thousands of other
persons, thus published the statement on Facebook, and did so with
the intent that many others would read the statement and republish
the statement to others, "[h]ere's some wonderful evidence of Danny
being a porn agent! I have received over 50 accounts of personal
stories (some with screen shots some just personal narratives) of the
many ways he has harassed, manipulated and victimized women."
SALDAYA then posted communications between plaintiff and another
person that SALDAYA asserted as "evidence" that plaintiff was a
sexual predator. SALDAYA's "evidence" were screenshots of a
communication between plaintiff and another person however the
"evidence" was presented by SALDAYA in a disjointed manner,
lacking continuity, and without including the complete communication,
thus in a way as to lead others to believe that plaintiff was a sexual
predator. In no way could the communication be construed as
predatory conduct if the truthful context was presented by SALDAYA.
The true context of the communication between plaintiff and the other
person was that the other person was asking and inquiring from
plaintiff of means in which the other person might be able to derive
income from certain media, because of plaintiff's knowledge,

Complaint and
Demand for Jury Trial

experience and training in media and promotion. SALDAYA then further posted, thus published, on Facebook in the same string, "[p]lease remember predators are often charming, smart, and nice. They know how to push just enough. This is one of many exchanges women had reluctantly with him. Many women do not want to share their story or details publicly. …women aren't believing other women when they have the courage to call out a predator in our community? fucking shocker. The socialized misogyny runs so deep, it's painful." (**SALDAYA's SECOND SET OF DEFAMATORY STATEMENTS**)

95.    On or about June 3, 2018, SALDAYA indicated to a Facebook group called Free Birth Society Group that had contact and links of tens of the thousands of other persons, "you can use my words from the original post", "the original post" accusing Gallagher, *inter alia*, of (1) furthering and promoting pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (2) being a sexual predator, acting in a manner that, and thereby, violated the ethical and professional practices of doulas and photographers and also violated criminal statutes; (3) enticing others to participate in pornography because of the possibility of financial gain and plaintiff did so in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (4) encouraging pregnant women and others to become involved in selling pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (5) dishonesty in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (6) deceiving the public in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (7) being

unethical in his practice as a doula in a manner that, and thereby, violated the ethical and professional practices of doulas; (8) dishonesty in his profession as photographer in a manner that, and thereby, violated the ethical and professional practices of photographers; (9) deception in his profession as a photographer for plaintiff's sexual gratification, financial gain and self-interest; and (10) unethical conduct in his profession as a photographer in a manner that, and thereby, violated the ethical and professional practices of photographers. In the same string, or conversation on Facebook, SALDAYA posted the statement on Facebook, thus published the statement on Facebook, and did so with the intent that many others would read the statement and republish the statement to others, "this broker/pimp/predator is allowed to continue", referring to plaintiff. (**SALDAYA's THIRD SET OF DEFAMATORY STATEMENTS**)

96. On or about June 3, 2018, SALDAYA indicated to a Facebook group called Free Birth Society Group that had contact and links of tens of the thousands of other persons that Gallagher "is a predator" and told those same tens of thousands of person who asked SALDAYA for the name of the person she believed was a predator that it was Gallagher who was the predator. (**SALDAYA's FOURTH SET OF DEFAMATORY STATEMENTS**)

   a.   **SALDAYA'S CONNECTION TO HAWAI'I AND KNOWLEDGE OF PLAINTIFF LIVING IN HAWAI'I**

97. For many years, SALDAYA lived on Maui, Hawai'i and that Gallagher lived in Maui, Hawai'i and ran a doula and photography business.

98. Along with Yolande Norris-Clark, SALDAYA is the owner and principal of a for-profit business called Free Birth Society (**FBS**) that has a presence on the World Wide Web.  For a fee, FBS provides

Complaint and
Demand for Jury Trial

training on childbirth without the assistance of medical professionals and also provides home birth "coaching packages", i.e., doula services. FBS services are in direct competition with Gallagher's intended profession.

99. FBS has a large presence in the doula community on Instagram where from at least December 12, 2017 through February 1, 2018, SALDAYAA used FBS' Instagram account, or identity, to allow the general public to intimately follow her journey to Maui, Hawai'i for the birth of her child. Every photo posted by FBS and SALDAYA was that of an apparently pregnant SALDAYA immersed in a location that would normally be associated and recognized as in the state of Hawai'i.

100. Throughout FBS' and SALDAYA's multiple Instagram posts, the words used and photos attached carried the theme of Hawai'i and was pervasive and constant, including displaying Hawai'i's majestic natural beauty and splendor. Hawai'i was used as a prop to convince FBS and SALDAYA's followers, i.e., potential clients, that what FBS and SALDAYA were offering was different from others in the freebirth and doula community. FBS and SALDAYA apparently intended to communicate to others, including potential clients, was that FBS and SALDAYA would also bring others a birth that is natural, majestic and beautiful. As such, FBS and SALDAYA used Hawai'i in the advertisement of its business.

101. From at least December 12, 2017 through February 1, 2018, FBS and SALDAYA posted Hawaiian themed advertisements on Instagram, each having multiple comments and hundreds of "likes".

102. On December 12, 2017, on the FBS Instagram account, FBS and SALDAYA posted a photo of SALDAYA in an airplane leaving for

Maui, stating, "One way flights to Maui – a literal dream come true. …In our favorite place on the planet."

103. On December 16, 2017, on the FBS Instagram account, FBS and SALDAYA posted a video of a beach in Maui and posted "Mama Maui".

104. On December 16, 2017, on the FBS Instagram account, FBS and SALDAYA posted a photo of herself on a beach in Maui stating "Having arrived on the gorgeous island of Maui, we are actively call in our nest to call home for the birthing time."

105. On December 26, 2017, on the FBS Instagram account, FBS and SALDAYA posted another photo of SALDAYA, apparently pregnant, on a beach in Maui.

106. On December 28, 2017, on the FBS Instagram account, FBS and SALDAYA posted a photo of herself in front of Hawaiian themed wall art and recognizable palm trees in the background, stating, "…it's why I'm here, on this slow moving magical island – to watch the turtles sunbath (sic), to feel the sun set on my face, my feet in the sand, to fall asleep to the rain …."

107. On January 7, 2018, on the FBS Instagram account, FBS and SALDAYA posted a photo of herself in a Maui stating, "…Now I have nothing to do but be here, in this sacred space, on this special island, opening up to a completely new existence inside myself."

108. On January 16, 2018, on the FBS Instagram account, FBS and SALDAYA posted another photo of SALDAYA, apparently pregnant, on a beach in Maui.

109. On January 27, 2018, on the FBS Instagram account, FBS and SALDAYA posted another photo of SALDAYA, apparently pregnant, with and open Hawaiian themed blouse displaying her belly and

wearing a haku lei.

110. On February 1, 2018, on the FBS Instagram account, FBS and SALDAYA posted another photo of SALDAYA, apparently happy with her new born child, stating "…born freely at home in Maui, Hawai'i."

111. On February 19, 2018, on the FBS Instagram account, FBS and SALDAYA posted an advertising pamphlet advertising her doula services, stating "I am thrilled to announce my new project here in Maui, 'Mamatoto'. Two wonderful mama friends and I are launching Village Prenatals for Hapai women and Motherbaby postpartum circles – upcountry and on the north shore, beginning in March. If you know any mamas on Maui please help us spread the word. …More info on www.mamatotomaui.com."

112.  FBS and SALDAYA continued, and continue, to post Hawaiian themed photos and messages to advertise its doula services.

### 3.    Defendant, Rachael Aughenbaugh (AUGHENBAUGH)

113. On, or about, June 3, 2018, Chrystal Docker (**Docker**) defended Gallagher's integrity, transparency and high level of professionalism, including that MatWise's accusations were false and not supported by any evidence, in a Facebook post.

114. On or about two weeks after Docker made the positive statement posted on Facebook about Gallagher and in response to Docker making the positive statement about Gallagher, AUGHENBAUGH sometimes using the social media identity "Rachael Phoenix" posted the statement on Facebook, including on and in DTD, thus published the statement on Facebook, and did so with the intent that many others would read the statement and republish the statement to others, "[s]o sorry to hear he's grooming you too!"

(**AUGHENBAUGH's FIRST SET OF DEFAMATORY STATEMENTS**)

115.   Prior to AUGHENBAUGH publishing AUGHENBAUGH's FIRST SET OF DEFAMATORY STATEMENTS, the term "groomed" was referenced in other Social Media discussions that AUGHENBAUGH participated in and reviewed, including discussions on Facebook referenced herein. "Groomed" was understood by AUGHENBAUGH to refer to Gallagher's victims who were the object of plaintiff's (1) furthering and promoting pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (2) being a sexual predator, acting in a manner that, and thereby, violated the ethical and professional practices of doulas and photographers and also violated criminal statutes; (3) enticing others to participate in pornography because of the possibility of financial gain and plaintiff did so in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (4) encouraging pregnant women and others to become involved in selling pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (5) dishonesty in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (6) deceiving the public in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (7) being unethical in his practice as a doula in a manner that, and thereby, violated the ethical and professional practices of doulas; (8) dishonesty in his profession as photographer in a manner that, and thereby, violated the ethical and professional practices of photographers; (9) deception in his profession as a photographer for

Complaint and
Demand for Jury Trial

plaintiff's sexual gratification, financial gain and self-interest; and (10) unethical conduct in his profession as a photographer in a manner that, and thereby, violated the ethical and professional practices of photographers.

116.   AUGHENBAUGH was aware that the persons AUGHENBAUGH published AUGHENBAUGH's FIRST SET OF DEFAMATORY STATEMENTS understood the meaning and implications of the term "groomed" in the manner that AUGHENBAUGH used the term, which was essentially that it was wrong for any person to discount or disbelieve the persons accusing Gallagher, *inter alia*, of (1) furthering and promoting pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (2) being a sexual predator, acting in a manner that, and thereby, violated the ethical and professional practices of doulas and photographers and also violated criminal statutes; (3) enticing others to participate in pornography because of the possibility of financial gain and plaintiff did so in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (4) encouraging pregnant women and others to become involved in selling pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (5) dishonesty in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (6) deceiving the public in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (7) being unethical in his practice as a doula in a manner that, and thereby, violated the ethical and professional practices of doulas; (8) dishonesty in his profession as photographer in a manner that, and thereby, violated the ethical

Complaint and
Demand for Jury Trial

and professional practices of photographers; (9) deception in his profession as a photographer for plaintiff's sexual gratification, financial gain and self-interest; and (10) unethical conduct in his profession as a photographer in a manner that, and thereby, violated the ethical and professional practices of photographers, and that the accusations were in fact true.

117.   On or about two weeks after Walz, infra, posted the statement on Facebook, including on and in DTD, thus published the statement on Facebook, and did so with the intent that many others would read the statement and republish the statement to others, "Bizarre, narcissistic and Predatory", AUGHENBAUGH posted communications between plaintiff and another person that AUGHENBAUGH asserted as "proof" that plaintiff was a sexual predator. AUGHENBAUGH's "proof" were screenshots of a communication between plaintiff and another person however were presented by AUGHENBAUGH in a disjointed manner, lacking continuity, and without including the complete communication, thus in a way as to lead others to believe that plaintiff was a sexual predator. In no way could the communications be construed as predatory conduct if the truthful and full context of the circumstances and communications were presented by AUGHENBAUGH. The true context of the communication between plaintiff and the other person was that the other person was asking and inquiring from plaintiff of means in which the other person might be able to derive income from certain commercial media platforms. Plaintiff directed advised the other person based on plaintiff's knowledge, experience and training in media and promotion. (**AUGHENBAUGH's SECOND SET OF DEFAMATORY STATEMENTS**)

118.  On or about June 3, 2018 Channa Jayde Walz (**Walz**) posted the
      statement on Facebook, including on and in DTD, thus published the
      statement on Facebook, and did so with the intent that many others
      would read the statement and republish the statement to others,
      "Bizarre, narcissistic and Predatory …I am not ashamed of warning
      women of a predatory man. …The screenshots and his own
      interactions within birth spaces say otherwise [i.e., that plaintiff is not
      a sexual predator] …None of the other male doulas I've seen display
      predatory behavior or are messaging vulnerable women about selling
      their panties "tactfully" on the internet … Defend him all you want. My
      views based on what I have seen him post in groups and based off
      what other women have accounted and shown from him is enough for
      me to feel it pertinent other women know of this. Multiple women
      have come forward and I believe them along with what I've seen for
      myself.

      I'm basing my opinion off of interactions I quietly sat back and
      observed on various occassions [*sic*] in different places. His polls and
      post and interactions with women within birthing spaces was bizarre
      and narcissistic at minimum and definitely predatory. In all my years
      of being in birth communities never once have I heard of doula pm
      info on how to get in to sex work by selling panties etc to women in
      financial crisis. A male doing this in predominately female spaces is
      predatory at best. The dismissal of various women's accounts against
      this one man is rather reminiscent of rape victims being silenced for
      speaking out against thier [*sic*] attackers. I know what I've seen and I
      most certainly believe the various accounts given and screen shotted
      by multiple women. Just because you've had a pleasant experience
      and do not find his behavior this way, does not mean others have not

30

experienced otherwise or perceive his actions differently. … He has made himself known as a broker in the industry which enticed vulnerable women. Yes she reached out to him. Yes she had a conversation with him. You can then see how she gets a bit standoffish. He even asks if he has overwhelmed her. Ever been offered something that you later regret taking? Ever accepted a date, go to his home and then decide things maybe went too fast and you have second thoughts? Many women have the "nice girl" complex and don't know how to shut a man down once they no longer feel comfortable. Sex work is not the issue. The issue is that a MAN has targeted vulnerable women within birthing spaces. He is not just giving them advice and sending them on their way. He is having them send him their content and "building their platform" for them. He has also directed multiple women to ONE domain instead of giving resources for multiple places to do this. He is objectifying women in these spaces. … And again, this is not an isolated incident to just one or two women. … The other screen shots etc are not mine to share. When those women feel the time is right They will put them out there. Not me."

119.   Immediately after and within the string of posts set forth immediately above, AUGHENBAUGH posted the statement on Facebook, thus published the statement on Facebook, and did so with the intent that many others would read the statement and republish the statement to others, "Exactly what Channa said," thus adding attempted add validity and veracity to Walz's defamatory statement.
(AUGHENBAUGH's THIRD SET OF DEFAMATORY STATEMENTS)

**B.   Innuendo, Inducement and Colloquium**

Complaint and
Demand for Jury Trial

120.  Each of the defamatory statements, i.e., those defined with all capital letters described above, falsely accused plaintiff of being deceptive in his careers, occupations and professions, including as a doula and a photographer.

121.  Each of the defamatory statements, i.e., those defined with all capital letters above, falsely accused plaintiff of rape, attempted murder, sexual exploitation, prostitution, "pimping" and/or sexual harassment which as described in each of the defamatory statements are felonies in all jurisdictions in the United States and otherwise serious violent offences.

122.  All of the defendants referenced above made the defamatory statements, i.e., those defined with all capital letters above, with authority, in that Defendants defamatory statements were apparently factually based and any opinion that defendants had were based on defendants' independent verification and having superior knowledge.

123.  Additionally, defendants were fully aware that those persons that would read, and did read, Defendants defamatory statements, i.e., those defined with all capital letters above, would regard and consider defendants as being in a position of superior knowledge, thus creating and manufacturing an umbrella of truth and validity in Defendants defamatory statements.

124.  From the history of posts that are accessible to anyone using the Internet, and especially those of the thousands of persons, including defendants, and each of them, all of whom reviewed the past linked and related statements on the Facebook identity, "DannytheDoula", "radfem –exposing" "The Doula Group", inter alia, t is clear to those thousands of persons that the defamatory statements i.e., those defined with all capital letters above, that defendants, and each and

every one of them, were referring to the Facebook posts that began on or about  June 1, 2017, and those that occurred immediately before and after MatWise's Set of Defamatory Statements accusing Gallagher, *inter alia*, of (1) furthering and promoting pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (2) being a sexual predator, acting in a manner that, and thereby, violated the ethical and professional practices of doulas and photographers and also violated criminal statutes; (3) enticing others to participate in pornography because of the possibility of financial gain and plaintiff did so in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (4) encouraging pregnant women and others to become involved in selling pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (5) dishonesty in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (6) deceiving the public in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (7) being unethical in his practice as a doula in a manner that, and thereby, violated the ethical and professional practices of doulas; (8) dishonesty in his profession as photographer in a manner that, and thereby, violated the ethical and professional practices of photographers; (9) deception in his profession as a photographer for plaintiff's sexual gratification, financial gain and self-interest; and (10) unethical conduct in his profession as a photographer in a manner that, and thereby, violated the ethical and professional practices of photographers.

125. Prior to defendants publishing each and any of their defamatory statements, i.e., those defined with all capital letters above, the term "groomed" was referenced in other Social Media discussion groups that any and each of the defendants participated. "Groomed" was understood by defendants and the readers of Defendants defamatory statements as referring to Gallagher's "victims" who were the object of plaintiff (1) furthering and promoting pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (2) being a sexual predator, acting in a manner that, and thereby, violated the ethical and professional practices of doulas and photographers and also violated criminal statutes; (3) enticing others to participate in pornography because of the possibility of financial gain and plaintiff did so in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (4) encouraging pregnant women and others to become involved in selling pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (5) dishonesty in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (6) deceiving the public in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (7) being unethical in his practice as a doula in a manner that, and thereby, violated the ethical and professional practices of doulas; (8) dishonesty in his profession as photographer in a manner that, and thereby, violated the ethical and professional practices of photographers; (9) deception in his profession as a photographer for plaintiff's sexual gratification, financial gain and self-interest; and (10) unethical conduct in his profession as a photographer in a manner

34

that, and thereby, violated the ethical and professional practices of photographers. That is to say that the term "groomed" was familiar to both the defendant making the above described defamatory statements and the person reading the term in the defamatory statements

126. Defendants defamatory statements, i.e., those defined with all capital letters above, were understood by the thousands of persons who did review defendants defamatory statements to mean that it was wrong and a factual mistake for any person to discount or disbelieve the persons accusing Gallagher, *inter alia*, of (1) furthering and promoting pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (2) being a sexual predator, acting in a manner that, and thereby, violated the ethical and professional practices of doulas and photographers and also violated criminal statutes; (3) enticing others to participate in pornography because of the possibility of financial gain and plaintiff did so in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (4) encouraging pregnant women and others to become involved in selling pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (5) dishonesty in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (6) deceiving the public in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (7) being unethical in his practice as a doula in a manner that, and thereby, violated the ethical and professional practices of doulas; (8) dishonesty in his profession as photographer in a manner that, and thereby, violated the ethical

Complaint and
Demand for Jury Trial

and professional practices of photographers; (9) deception in his profession as a photographer for plaintiff's sexual gratification, financial gain and self-interest; and (10) unethical conduct in his profession as a photographer in a manner that, and thereby, violated the ethical and professional practices of photographers, and that the accusations were in fact true.

127. Prior to publishing each and any of the defamatory statements alleged above, i.e., those defined with all capital letters above, defendants, and each of them, knowingly did absolutely nothing to determine, or otherwise verify the truth of the implications of any and all of the defamatory statements defendants leveled against Gallagher.

128. In fact all of the defendants were warned by many persons, that the accusations leveled against plaintiff were untrue and to proceed with caution in further disseminating the false accusations.

129. Prior to publishing each and all of the defamatory, i.e., those defined with all capital letters above, defendants, and each of them, knew that the accusations were false, however still published the defamatory statements, and have since continued to publish the defamatory statements to other persons, on social media, and directly to each and all of defendants' family, friends, business acquaintances and persons and who do not have any prior knowledge of plaintiff, i.e., indiscriminately to whomever will listen, may use the Internet and has the ability to read Defendants defamatory statements, which was, and is, each and every one of the defendants' intention.

130. Prior to publishing the defamatory statements, defendants knew and otherwise were fully aware that the defamatory statements were not true.

131. Prior to publishing the defamatory statements, defendants acted in reckless disregard for the truth in the defamatory statements by not conducting any diligence, inquiry and investigation as to whether or not the defamatory statements were true or false.

132. Prior to publishing the defamatory statements, defendants failed use reasonable care to determine the truth or falsity in the defamatory statements by not conducting reasonable diligence, inquiry and investigation as to whether or not the defamatory statements were true or false.

133. Moreover, by each and every defendant publishing the defamatory statements, each and every defendant outwardly ratified, endorsed, approved, consented, confirmed and validated the accusations made by MatWise, that is to say, that Gallagher *inter alia*, (1) furthered and promoted pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (2) was a sexual predator acting in a manner that, and thereby, violated the ethical and professional practices of doulas and photographers and also violated criminal statutes; (3) enticed others to participate in pornography because of the possibility of financial gain and plaintiff did so in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (4) strongly encouraged pregnant women and others to become involved in selling pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (5) was dishonest in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (6) deceived the public in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (7) was unethical in his

37

practice as a doula in a manner that, and thereby, violated the ethical and professional practices of doulas; (8) was dishonest in his profession as photographer in a manner that, and thereby, violated the ethical and professional practices of photographers; (9) was deceptive in his profession as a photographer for plaintiff's sexual gratification, financial gain and self-interest; and (10) was unethical in his profession as a photographer in a manner that, and thereby, violated the ethical and professional practices of photographers.

134.    The context of these defamatory statements of and concerning plaintiff is that all, of the defamatory statements were made by each and every defendant knowing that the listeners and readers had participated in past, or ongoing, discussions concerning plaintiff and that defendants' defamatory statements were intended by defendants to mean and that the listeners and readers would understand, and did understand, that plaintiff (1) furthered and promoted pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (2) was a sexual predator acting in a manner that, and thereby, violated the ethical and professional practices of doulas and photographers and also violated criminal statutes; (3) enticed others to participate in pornography because of the possibility of financial gain and plaintiff did so in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (4) strongly encouraged pregnant women and others to become involved in selling pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (5) was dishonest in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (6) deceived the public in

Complaint and
Demand for Jury Trial

his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (7) was unethical in his practice as a doula in a manner that, and thereby, violated the ethical and professional practices of doulas; (8) was dishonest in his profession as photographer in a manner that, and thereby, violated the ethical and professional practices of photographers; (9) was deceptive in his profession as a photographer for plaintiff's sexual gratification, financial gain and self-interest; and (10) was unethical in his profession as a photographer in a manner that, and thereby, violated the ethical and professional practices of photographers.

## I.CLAIM I

(Libel against all Defendants and Does 1 through 10)

135. Plaintiff incorporates by reference paragraphs 1 through 189 as though fully set forth herein.

136. Defendants made and published the defamatory statements as specifically described above and herein,

(1)SALDAYA'S publication of SALDAYA's FIRST SET OF DEFAMATORY STATEMENTS;

(2)SALDAYA's publication of SALDAYA's SECOND SET OF DEFAMATORY STATEMENTS;

(3)SALDAYA's publication of SALDAYA's THIRD SET OF DEFAMATORY STATEMENTS;

(4)SALDAYA's publication of SALDAYA's FOURTH SET OF DEFAMATORY STATEMENTS;

(5)AUGHENBAUGH's publication of AUGHENBAUGH's FIRST SET OF DEFAMATORY STATEMENTS;

(6)AUGHENBAUGH's publication of AUGHENBAUGH's SECOND SET OF DEFAMATORY STATEMENTS;

Complaint and
Demand for Jury Trial

(7)AUGHENBAUGH's publication of AUGHENBAUGH's THIRD SET OF DEFAMATORY STATEMENTS;

137. All defendants used at least Facebook, including on and in DTD and MIM, to write, and thereby publish, the defamatory statements described above and incorporated by reference herein, which included, that plaintiff (1) furthered and promoted pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (2) was a sexual predator acting in a manner that, and thereby, violated the ethical and professional practices of doulas and photographers and also violated criminal statutes; (3) enticed others to participate in pornography because of the possibility of financial gain and plaintiff did so in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (4) strongly encouraged pregnant women and others to become involved in selling pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (5) was dishonest in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (6) deceived the public in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (7) was unethical in his practice as a doula in a manner that, and thereby, violated the ethical and professional practices of doulas; (8) was dishonest in his profession as photographer in a manner that, and thereby, violated the ethical and professional practices of photographers; (9) was deceptive in his profession as a photographer for plaintiff's sexual gratification, financial gain and self-interest; and (10) was unethical in his

Complaint and
Demand for Jury Trial

profession as a photographer in a manner that, and thereby, violated the ethical and professional practices of photographers.

138. All defendants did use other social media websites to write, and thereby publish, the defamatory statements described above and incorporated by reference herein.

139. Prior to publishing their defamatory statements, all defendants were fully aware that Facebook and the other social media websites used to publish defendants' defamatory statements described above and incorporated by reference herein had members and subscribers located worldwide.

140. Prior to publishing their defamatory statements, all defendants were fully aware that Facebook had a membership of approximately two billion persons and that by publishing their defamatory statements, the defamatory statements would be read by hundreds to thousands of Facebook's membership.

141. Prior to publishing their defamatory statements, all defendants were fully aware that publishing the defamatory statements described above and incorporated by reference herein would reach the eyes and ears of at least hundreds to thousands of persons, and that after defendants did publish the defamatory statements described above and incorporated by reference herein that the published defamatory statements did reach the eyes and ears of at least hundreds to thousands of persons.

142. All defendants published the defamatory statements described above and incorporated by reference herein fully aware that plaintiff lived in Hawai'i and that plaintiff was a professionally practicing doula and photographer in the state of Hawai'i.

143. All defendants were fully aware that Defendants defamatory

Complaint and
Demand for Jury Trial

statements described above and incorporated by reference herein would cause a negative effect on plaintiff professionally practicing as a doula and photographer, i.e., defendants intended that their defamatory statements would prevent plaintiff from professionally practicing as a doula and photographer. In addition, defendants were fully aware that because of their defamatory statements, plaintiff's reputation would be damaged in the community in Hawai'i and the virtual community located in the world-wide-web.

144. It was, is, and has always been, untrue, and false, that plaintiff 1) furthered and promoted pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (2) was a sexual predator acting in a manner that, and thereby, violated the ethical and professional practices of doulas and photographers and also violated criminal statutes; (3) enticed others to participate in pornography because of the possibility of financial gain and plaintiff did so in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (4) strongly encouraged pregnant women and others to become involved in selling pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (5) was dishonest in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (6) deceived the public in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (7) was unethical in his practice as a doula in a manner that, and thereby, violated the ethical and professional practices of doulas; (8) was dishonest in his profession as photographer in a manner that, and thereby, violated the ethical and professional practices of

Complaint and
Demand for Jury Trial

photographers; (9) was deceptive in his profession as a photographer for plaintiff's sexual gratification, financial gain and self-interest; and (10) was unethical in his profession as a photographer in a manner that, and thereby, violated the ethical and professional practices of photographers.

145.  Defendants' defamatory statements were not privileged and plaintiff did not consent to the publication of the defamatory statements. Plaintiff, in fact, implored defendants to stop the publication of the defamatory statements.

146.  Prior to publishing the defamatory statements, defendants knew and otherwise were fully aware that the defamatory statements were not true.

147.  Prior to publishing the defamatory statements, defendants acted in reckless disregard for the truth in the defamatory statements by not conducting any diligence, inquiry and investigation as to whether or not the defamatory statements were true or false.

148.  Prior to publishing the defamatory statements, defendants failed use reasonable care to determine the truth or falsity in the defamatory statements by not conducting reasonable diligence, inquiry and investigation as to whether or not the defamatory statements were true or false.

149.  The hundreds to thousands of person who did read defendants' defamatory statements on Facebook and other social media websites understood that the defamatory statements to be of and concerning plaintiff and were understood by the hundreds to thousands of persons to mean that plaintiff (1) furthered and promoted pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (2)

Complaint and
Demand for Jury Trial

was a sexual predator acting in a manner that, and thereby, violated the ethical and professional practices of doulas and photographers and also violated criminal statutes; (3) enticed others to participate in pornography because of the possibility of financial gain and plaintiff did so in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (4) strongly encouraged pregnant women and others to become involved in selling pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (5) was dishonest in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (6) deceived the public in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (7) was unethical in his practice as a doula in a manner that, and thereby, violated the ethical and professional practices of doulas; (8) was dishonest in his profession as photographer in a manner that, and thereby, violated the ethical and professional practices of photographers; (9) was deceptive in his profession as a photographer for plaintiff's sexual gratification, financial gain and self-interest; and (10) was unethical in his profession as a photographer in a manner that, and thereby, violated the ethical and professional practices of photographers.

150.  Because of the facts and circumstances that were known to the hundreds to thousands of readers of the defamatory statements, including that plaintiff was a professionally practicing doula and photographer in Hawai'i,

(1)The defamatory statements tended to injure plaintiff in his occupations as a doula and photographer, and otherwise injure plaintiff whether or not plaintiff was a doula or photographer;

(2)The defamatory statements exposed plaintiff to hatred, contempt, ridicule, and shame by (1) persons residing in Hawai'i; (2) persons involved and interested in the doula community and matters concerning doula; (3) persons who were involved and interested in photography; and (4) those persons using the world-wide-web interested in plaintiff, doulas and/or photography; and

(3)The defamatory statements discouraged others from associating or dealing with plaintiff.

151. Defendants knew that the listeners and readers of the defamatory statements would be compelled to republish the defamatory statements to others by word of mouth, electronic communication and through social media websites and the persons who did hear and did read the defamatory statements did republish the defamatory statements to others.

152. Defendants' defamatory statements caused plaintiff to lose employment and income.

153.  Defendants' defamatory statements caused plaintiff's Hawaiian and virtual community to shun him, avoid him and hate him and further caused plaintiff's Hawaiian and virtual community to stop being his friend, stop following him, or otherwise end any, and all, connection and association to plaintiff.

154. Plaintiff's personal and professional reputation was harmed as a result of defendants' defamatory statements and such reputation is continuing to be harmed because defendants continue to make the same defamatory statements as described and continue to permit the defamatory statements to go viral on social media websites.

155. Plaintiff sustained reputational and financial harm to his businesses, professions and occupations as a result of the defamatory

Complaint and
Demand for Jury Trial

statements.

156. Plaintiff was damaged as set forth below and as follows,

WHEREFORE plaintiff prays that this court grant relief in compensatory damages against each defendant and in favor of plaintiff in the amount of $5,000.000.00, for an order retracting and correcting the defamatory statements, for equitable relief based on principles that are fair and just, and for judgment as also set forth below.

## II.CLAIM II

(Libel Per Se against all defendants and Does 1 through 10)

157. Plaintiff incorporates by reference paragraphs 1 through 211 as though fully set forth herein.

158. Defendants made and published the defamatory statements as specifically described above, which among other things falsely accused plaintiff of committing a crime that was a felony.

159. All defendants used at least Facebook to write, and thereby publish, the defamatory statements described above and incorporated by reference herein, which included, that plaintiff (1) furthered and promoted pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (2) was a sexual predator acting in a manner that, and thereby, violated the ethical and professional practices of doulas and photographers and also violated criminal statutes; (3) enticed others to participate in pornography because of the possibility of financial gain and plaintiff did so in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (4) strongly encouraged pregnant women and others to become involved in selling pornography in a manner that violated the ethical and professional practices adhered to and expected of

46

doulas and photographers; (5) was dishonest in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (6) deceived the public in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (7) was unethical in his practice as a doula in a manner that, and thereby, violated the ethical and professional practices of doulas; (8) was dishonest in his profession as photographer in a manner that, and thereby, violated the ethical and professional practices of photographers; (9) was deceptive in his profession as a photographer for plaintiff's sexual gratification, financial gain and self-interest; and (10) was unethical in his profession as a photographer in a manner that, and thereby, violated the ethical and professional practices of photographers.

160. All defendants did use other social media websites to write, and thereby publish, the defamatory statements described above and incorporated by reference herein.

161. Prior to publishing their defamatory statements, all defendants were fully aware that Facebook and the other social media websites used to publish defendants' defamatory statements described above and incorporated by reference herein had members and subscribers located worldwide.

162. Prior to publishing their defamatory statements, all defendants were fully aware that Facebook had a membership of approximately two billion persons and that by publishing their defamatory statements, the defamatory statements would be read by hundreds to thousands of Facebook's membership.

163. Prior to publishing their defamatory statements, all defendants were fully aware that publishing the defamatory statements described above and incorporated by reference herein would reach the eyes

and ears of at least hundreds to thousands of persons, and that after defendants did publish the defamatory statements described above and incorporated by reference herein that the published defamatory statements did reach the eyes and ears of at least hundreds to thousands of persons.

164. All defendants published the defamatory statements described above and incorporated by reference herein fully aware that plaintiff lived in Hawai'i and that plaintiff was a professionally practicing doula and photographer in the state of Hawai'i.

165. All defendants were fully aware that Defendants defamatory statements described above and incorporated by reference herein would cause a negative effect on plaintiff professionally practicing as a doula and photographer, i.e., defendants intended that their defamatory statements would prevent plaintiff from professionally practicing as a doula and photographer. In addition, defendants were fully aware that because of their defamatory statements, plaintiff's reputation would be damaged in the community in Hawai'i and the virtual community located in the world-wide-web.

166. It was, is, and has always been, untrue, and false, that plaintiff 1) furthered and promoted pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (2) was a sexual predator acting in a manner that, and thereby, violated the ethical and professional practices of doulas and photographers and also violated criminal statutes; (3) enticed others to participate in pornography because of the possibility of financial gain and plaintiff did so in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (4) strongly encouraged pregnant women and

others to become involved in selling pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (5) was dishonest in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (6) deceived the public in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (7) was unethical in his practice as a doula in a manner that, and thereby, violated the ethical and professional practices of doulas; (8) was dishonest in his profession as photographer in a manner that, and thereby, violated the ethical and professional practices of photographers; (9) was deceptive in his profession as a photographer for plaintiff's sexual gratification, financial gain and self-interest; and (10) was unethical in his profession as a photographer in a manner that, and thereby, violated the ethical and professional practices of photographers.

167. Defendants' defamatory statements were not privileged and plaintiff did not consent to the publication of the defamatory statements. Plaintiff, in fact, implored defendants to stop the publication of the defamatory statements.

168. Prior to publishing the defamatory statements, defendants knew and otherwise were fully aware that the defamatory statements were not true.

169. Prior to publishing the defamatory statements, defendants acted in reckless disregard for the truth in the defamatory statements by not conducting any diligence, inquiry and investigation as to whether or not the defamatory statements were true or false.

170. Prior to publishing the defamatory statements, defendants failed use reasonable care to determine the truth or falsity in the defamatory

statements by not conducting reasonable diligence, inquiry and investigation as to whether or not the defamatory statements were true or false.

171. The hundreds to thousands of person who did read defendants' defamatory statements on Facebook and other social media websites understood that the defamatory statements to be of and concerning plaintiff and were understood by the hundreds to thousands of persons to mean that plaintiff (1) furthered and promoted pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (2) was a sexual predator acting in a manner that, and thereby, violated the ethical and professional practices of doulas and photographers and also violated criminal statutes; (3) enticed others to participate in pornography because of the possibility of financial gain and plaintiff did so in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (4) strongly encouraged pregnant women and others to become involved in selling pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (5) was dishonest in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (6) deceived the public in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (7) was unethical in his practice as a doula in a manner that, and thereby, violated the ethical and professional practices of doulas; (8) was dishonest in his profession as photographer in a manner that, and thereby, violated the ethical and professional practices of photographers; (9) was deceptive in his profession as a photographer for plaintiff's sexual

gratification, financial gain and self-interest; and (10) was unethical in his profession as a photographer in a manner that, and thereby, violated the ethical and professional practices of photographers.

172. Because of the facts and circumstances that were known to the hundreds to thousands of readers of the defamatory statements, including that plaintiff was a professionally practicing doula and photographer in Hawai'i,

(1) The defamatory statements tended to injure plaintiff in his occupations as a doula and photographer, and otherwise injure plaintiff whether or not plaintiff was a doula or photographer;

(2) The defamatory statements exposed plaintiff to hatred, contempt, ridicule, and shame by (1) persons residing in Hawai'i; (2) persons involved and interested in the doula community and matters concerning doula; (3) persons who were involved and interested in photography; and (4) those persons using the world-wide-web interested in plaintiff, doulas and/or photography; and

(3) The defamatory statements discouraged others from associating or dealing with plaintiff.

173. Defendants knew that the listeners and readers of the defamatory statements would be compelled to republish the defamatory statements to others by word of mouth, electronic communication and through social media websites and the persons who did hear and did read the defamatory statements did republish the defamatory statements to others.

174. Defendants' defamatory statements caused plaintiff to lose employment and income.

175. Defendants' defamatory statements caused plaintiff's Hawaiian and virtual community to shun him, avoid him and hate him and further

Complaint and
Demand for Jury Trial

caused plaintiff's Hawaiian and virtual community to stop being his friend, stop following him, or otherwise end any, and all, connection and association to plaintiff.

176.  Plaintiff's personal and professional reputation was harmed as a result of defendants' defamatory statements and such reputation is continuing to be harmed because defendants continue to make the same defamatory statements as described and continue to permit the defamatory statements to go viral on social media websites.

177.  Plaintiff sustained reputational and financial harm to his businesses, professions and occupations as a result of the defamatory statements.

178.  Plaintiff was damaged as set forth below and as follows,

WHEREFORE plaintiff prays that this court grant relief in compensatory damages against each defendant and in favor of plaintiff in the amount of $5,000.000.00, for an order retracting and correcting the defamatory statements, for equitable relief based on principles that are fair and just, and for judgment as also set forth below.

### III.CLAIM III

(Trade Libel against all defendants and Does 1 through 10)

179.  Plaintiff incorporates by reference paragraphs 1 through 233 as though fully set forth herein.

180.  Defendants made and published the defamatory statements as specifically described above, which among other things falsely accused plaintiff of committing rendering unprofessional and substandard services as a doula and photographer using the services to violated plaintiff's clients' rights.

181.  All defendants used at least Facebook to write, and thereby publish, the defamatory statements described above and incorporated by

reference herein, which included, that plaintiff (1) furthered and promoted pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (2) was a sexual predator acting in a manner that, and thereby, violated the ethical and professional practices of doulas and photographers and also violated criminal statutes; (3) enticed others to participate in pornography because of the possibility of financial gain and plaintiff did so in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (4) strongly encouraged pregnant women and others to become involved in selling pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (5) was dishonest in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (6) deceived the public in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (7) was unethical in his practice as a doula in a manner that, and thereby, violated the ethical and professional practices of doulas; (8) was dishonest in his profession as photographer in a manner that, and thereby, violated the ethical and professional practices of photographers; (9) was deceptive in his profession as a photographer for plaintiff's sexual gratification, financial gain and self-interest; and (10) was unethical in his profession as a photographer in a manner that, and thereby, violated the ethical and professional practices of photographers.

182. All defendants did use other social media websites to write, and thereby publish, the defamatory statements described above and incorporated by reference herein.

183. Prior to publishing their defamatory statements, all defendants were

Complaint and
Demand for Jury Trial

fully aware that Facebook and the other social media websites used to publish defendants' defamatory statements described above and incorporated by reference herein had members and subscribers located worldwide.

184. Prior to publishing their defamatory statements, all defendants were fully aware that Facebook had a membership of approximately two billion persons and that by publishing their defamatory statements, the defamatory statements would be read by hundreds to thousands of Facebook's membership.

185. Prior to publishing their defamatory statements, all defendants were fully aware that publishing the defamatory statements described above and incorporated by reference herein would reach the eyes and ears of at least hundreds to thousands of persons, and that after defendants did publish the defamatory statements described above and incorporated by reference herein that the published defamatory statements did reach the eyes and ears of at least hundreds to thousands of persons.

186. All defendants published the defamatory statements described above and incorporated by reference herein fully aware that plaintiff lived in Hawai'i and that plaintiff was a professionally practicing doula and photographer in the state of Hawai'i.

187. All defendants were fully aware that Defendants defamatory statements described above and incorporated by reference herein would cause a negative effect on plaintiff professionally practicing as a doula and photographer, i.e., defendants intended that their defamatory statements would prevent plaintiff from professionally practicing as a doula and photographer. In addition, defendants were fully aware that because of their defamatory statements, plaintiff's

Complaint and
Demand for Jury Trial

reputation would be damaged in the community in Hawai'i and the virtual community located in the world-wide-web.

188. It was, is, and has always been, untrue, and false, that plaintiff (1) furthered and promoted pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (2) was a sexual predator acting in a manner that, and thereby, violated the ethical and professional practices of doulas and photographers and also violated criminal statutes; (3) enticed others to participate in pornography because of the possibility of financial gain and plaintiff did so in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (4) strongly encouraged pregnant women and others to become involved in selling pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (5) was dishonest in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (6) deceived the public in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (7) was unethical in his practice as a doula in a manner that, and thereby, violated the ethical and professional practices of doulas; (8) was dishonest in his profession as photographer in a manner that, and thereby, violated the ethical and professional practices of photographers; (9) was deceptive in his profession as a photographer for plaintiff's sexual gratification, financial gain and self-interest; and (10) was unethical in his profession as a photographer in a manner that, and thereby, violated the ethical and professional practices of photographers.

189. Defendants' defamatory statements were not privileged and plaintiff

did not consent to the publication of the defamatory statements. Plaintiff, in fact, implored defendants to stop the publication of the defamatory statements.

190. Prior to publishing the defamatory statements, defendants knew and otherwise were fully aware that the defamatory statements were not true.

191. Prior to publishing the defamatory statements, defendants acted in reckless disregard for the truth in the defamatory statements by not conducting any diligence, inquiry and investigation as to whether or not the defamatory statements were true or false.

192. Prior to publishing the defamatory statements, defendants failed use reasonable care to determine the truth or falsity in the defamatory statements by not conducting reasonable diligence, inquiry and investigation as to whether or not the defamatory statements were true or false.

193. The hundreds to thousands of person who did read defendants' defamatory statements on Facebook and other social media websites understood that the defamatory statements to be of and concerning plaintiff and were understood by the hundreds to thousands of persons to mean that plaintiff (1) furthered and promoted pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (2) was a sexual predator acting in a manner that, and thereby, violated the ethical and professional practices of doulas and photographers and also violated criminal statutes; (3) enticed others to participate in pornography because of the possibility of financial gain and plaintiff did so in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (4) strongly

encouraged pregnant women and others to become involved in selling pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (5) was dishonest in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (6) deceived the public in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (7) was unethical in his practice as a doula in a manner that, and thereby, violated the ethical and professional practices of doulas; (8) was dishonest in his profession as photographer in a manner that, and thereby, violated the ethical and professional practices of photographers; (9) was deceptive in his profession as a photographer for plaintiff's sexual gratification, financial gain and self-interest; and (10) was unethical in his profession as a photographer in a manner that, and thereby, violated the ethical and professional practices of photographers.

194.   Because of the facts and circumstances that were known to the hundreds to thousands of readers of the defamatory statements, including that plaintiff was a professionally practicing doula and photographer in Hawai'i,

(1) The defamatory statements tended to injure plaintiff in his occupations as a doula and photographer, and otherwise injure plaintiff whether or not plaintiff was a doula or photographer;

(2) The defamatory statements exposed plaintiff to hatred, contempt, ridicule, and shame by (1) persons residing in Hawai'i; (2) persons involved and interested in the doula community and matters concerning doula; (3) persons who were involved and interested in photography; and (4) those persons using the world-wide-web interested in plaintiff, doulas and/or photography; and

Complaint and
Demand for Jury Trial

(3)The defamatory statements discouraged others from associating or dealing with plaintiff.

195.  Defendants knew that the listeners and readers of the defamatory statements would be compelled to republish the defamatory statements to others by word of mouth, electronic communication and through social media websites and the persons who did hear and did read the defamatory statements did republish the defamatory statements to others.

196.  Defendants' defamatory statements caused plaintiff to lose employment and income.

197.   Defendants' defamatory statements caused plaintiff's Hawaiian and virtual community to shun him, avoid him and hate him and further caused plaintiff's Hawaiian and virtual community to stop being his friend, stop following him, or otherwise end any, and all, connection and association to plaintiff.

198.  Defendants knew that their defamatory statements would cause plaintiff's potential clients, clients, and other persons involved in the professional doula and professional photography community, would rely on the defendants' defamatory statements and cause financial loss to plaintiff.

199.  Plaintiff sustained harm to his businesses, professions and occupations as a result of the defamatory statements.

200.  Plaintiff sustained financial harm because plaintiff's potential clients, clients, and other persons involved in the professional doula and professional photography community, did rely on defendants' defamatory statements.

201.  In reliance on defendants' defamatory statements, plaintiff's potential clients, clients, and other persons involved in the professional doula

and professional photography community did shun and disassociate themselves from plaintiff that was a substantial factor in plaintiff's financial harm.

202.  Plaintiff was damaged as set forth below and as follows,

WHEREFORE plaintiff prays that this court grant relief in compensatory damages against each defendant and in favor of plaintiff in the amount of $5,000.000.00, for an order retracting and correcting the defamatory statements, for equitable relief based on principles that are fair and just, and for judgment as also set forth below.

### IV.CLAIM IV

(False Light against all defendants and Does 1 through 10)

203.  Plaintiff incorporates by reference paragraphs 1 through 257 as though fully set forth herein.

204.  Defendants published the defamatory statements as specifically described above and incorporated herein and the statements showed plaintiff in a false light.

205.  The false light was highly offensive to a reasonable person in plaintiff's position.

206.  Defendants knew that the publication of the defamatory statements would create a false impression that plaintiff, (1) furthered and promoted pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (2) was a sexual predator acting in a manner that, and thereby, violated the ethical and professional practices of doulas and photographers and also violated criminal statutes; (3) enticed others to participate in pornography because of the possibility of financial gain and plaintiff did so in a manner that violated the ethical and professional practices adhered to and expected of doulas and

59

photographers; (4) strongly encouraged pregnant women and others to become involved in selling pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (5) was dishonest in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (6) deceived the public in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (7) was unethical in his practice as a doula in a manner that, and thereby, violated the ethical and professional practices of doulas; (8) was dishonest in his profession as photographer in a manner that, and thereby, violated the ethical and professional practices of photographers; (9) was deceptive in his profession as a photographer for plaintiff's sexual gratification, financial gain and self-interest; and (10) was unethical in his profession as a photographer in a manner that, and thereby, violated the ethical and professional practices of photographers.

207.  Defendants' defamatory statements were not privileged and plaintiff did not consent to the publication of the defamatory statements. Plaintiff, in fact, implored defendants to stop the publication of the defamatory statements.

208.  Prior to publishing the defamatory statements, defendants knew that publishing the defamatory statements would create a false impression about plaintiff.

209.  Prior to publishing the defamatory statements, defendants acted in reckless disregard for the truth in the defamatory statements by not conducting any diligence, inquiry and investigation as to whether or not the defamatory statements were true or false.

210.  Prior to publishing the defamatory statements, defendants failed use reasonable care to determine the truth or falsity in the defamatory

Complaint and
Demand for Jury Trial

statements by not conducting reasonable diligence, inquiry and investigation as to whether or not the defamatory statements were true or false.

211. Plaintiff sustained reputational and financial harm as result of defendants' publication of the defamatory statements.

WHEREFORE plaintiff requests that this court grant relief in compensatory damages against each defendant and in favor of plaintiff in the amount of $5,000.000.00, for an order retracting and correcting the defamatory statements and any equitable relief based on principles that are fair and just.

## V.CLAIM V

(Intentional Infliction of Emotional Distress against all defendants and Does 1 through 10)

212. Plaintiff incorporates by reference paragraphs 1 through 266 as though fully set forth herein.

213. Defendants published the defamatory statements as specifically described above and incorporated herein.

214. Defendants' conduct was outrageous.

215. Defendants' conduct was intended by each of the defendants, or carried out in reckless disregard, to cause plaintiff emotional distress.

216. Plaintiff suffered severe emotional distress.

217. Defendants' conduct was a substantial factor in causing plaintiff's emotional distress.

218. WHEREFORE plaintiff prays that this court grant relief in compensatory damages against each defendant and in favor of plaintiff in the amount of $5,000.000.00, for an order retracting and correcting the defamatory statements, for equitable relief based on principles that are fair and just, and for judgment as also set forth

Complaint and
Demand for Jury Trial

below.

## VI.CLAIM VI

(Negligent Infliction of Emotional Distress against all defendants and Does 1 through 10)

219.  Plaintiff incorporates by reference paragraphs 1 through 273 as though fully set forth herein.

220.  Defendants published the defamatory statements as specifically described above and incorporated herein.

221.  Prior to publishing the defamatory statements, defendants failed use reasonable care to determine the truth or falsity in the defamatory statements by not conducting reasonable diligence, inquiry and investigation as to whether or not the defamatory statements were true or false.

222.  Defendants were negligent.

223.  Plaintiff suffered severe emotional distress.

224.  Defendants' negligent conduct was a substantial factor in causing plaintiff's emotional distress.

WHEREFORE plaintiff prays that this court grant relief in compensatory damages against each defendant and in favor of plaintiff in the amount of $5,000.000.00, for an order retracting and correcting the defamatory statements, for equitable relief based on principles that are fair and just, and for judgment as also set forth below.

## VII.CLAIM VII

(Injunctive Relief - against all defendants and Does 1 through 10)

225.  Plaintiff incorporates by reference paragraphs 1 through 279 as though fully set forth herein.

226.  Defendants have caused irreparable harm to plaintiff's businesses, in reputation, in income, in the goodwill in the businesses that no

Complaint and
Demand for Jury Trial

amount of damages could adequately compensate plaintiff for injuries he sustained, is sustaining and will sustain, because defendants defamatory statements continue to be posted on internet websites such as Facebook, and defendants continue to assert that the statements are true thereby destroying plaintiff's reputation and business in an ongoing and continuous manner.

227. Defendants continue to publish the defamatory statements on social media making it impossible for plaintiff to practice as a doula and a professional photographer and thus limiting plaintiff's income, making the harm ongoing.

228. Defendants' conduct is a substantial factor in plaintiff's ongoing harm.

229. Plaintiff prays this court for an order enjoining defendants, and each of them, from making and publishing any, and all, defamatory statements that accuse plaintiff of (1) furthering and promoting pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (2) being a sexual predator, acting in a manner that, and thereby, violated the ethical and professional practices of doulas and photographers and also violated criminal statutes; (3) enticing others to participate in pornography because of the possibility of financial gain and plaintiff did so in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (4) encouraging pregnant women and others to become involved in selling pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (5) dishonesty in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (6) deceiving the public in his practice as a doula for plaintiff's sexual

Complaint and
Demand for Jury Trial

gratification, financial gain and self-interest; (7) being unethical in his practice as a doula in a manner that, and thereby, violated the ethical and professional practices of doulas; (8) dishonesty in his profession as photographer in a manner that, and thereby, violated the ethical and professional practices of photographers; (9) deception in his profession as a photographer for plaintiff's sexual gratification, financial gain and self-interest; and (10) unethical conduct in his profession as a photographer in a manner that, and thereby, violated the ethical and professional practices of photographers.

230.  Plaintiff prays this court for an injunction ordering defendants, and each of them, to retract the defamatory statements and to take the defamatory statements down from the websites in which the statements were made and published, specifically defendants should retract and take down any, and all, defamatory statements made and published by defendants that accuse plaintiff of (1) furthering and promoting pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (2) being a sexual predator, acting in a manner that, and thereby, violated the ethical and professional practices of doulas and photographers and also violated criminal statutes; (3) enticing others to participate in pornography because of the possibility of financial gain and plaintiff did so in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (4) encouraging pregnant women and others to become involved in selling pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (5) dishonesty in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (6)

64

deceiving the public in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (7) being unethical in his practice as a doula in a manner that, and thereby, violated the ethical and professional practices of doulas; (8) dishonesty in his profession as photographer in a manner that, and thereby, violated the ethical and professional practices of photographers; (9) deception in his profession as a photographer for plaintiff's sexual gratification, financial gain and self-interest; and (10) unethical conduct in his profession as a photographer in a manner that, and thereby, violated the ethical and professional practices of photographers.

### VIII.CLAIM VIII

(Declaratory Relief against Defendant and Does 1 through 10)

231. Plaintiff incorporates by reference paragraphs 1 through 285 as though fully set forth herein.

232. So that plaintiff may present to social media websites that the herein defamatory statements violate the terms and conditions of social media websites, if they do, regarding publication of false and defamatory statements that tend to harass and harm other persons, plaintiff prays that this this court to declare as false accusations of plaintiff (1) furthering and promoting pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (2) being a sexual predator, acting in a manner that, and thereby, violated the ethical and professional practices of doulas and photographers and also violated criminal statutes; (3) enticing others to participate in pornography because of the possibility of financial gain and plaintiff did so in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (4) encouraging pregnant

65

women and others to become involved in selling pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (5) dishonesty in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (6) deceiving the public in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (7) being unethical in his practice as a doula in a manner that, and thereby, violated the ethical and professional practices of doulas; (8) dishonesty in his profession as photographer in a manner that, and thereby, violated the ethical and professional practices of photographers; (9) deception in his profession as a photographer for plaintiff's sexual gratification, financial gain and self-interest; and (10) unethical conduct in his profession as a photographer in a manner that, and thereby, violated the ethical and professional practices of photographers.

WHEREFORE, plaintiff prays for judgment as set forth below.

## PRAYER FOR RELIEF

Plaintiff, DANNY GALLAGHER, prays as to the first through eighth claims:

1. Award plaintiff $100,000.00 in economic damages as to each defendant;

2. Award plaintiff $5,000,000.00 as to each defendant in non-economic damages.

3. Order and an injunction permanently restraining and enjoining defendants as set forth in the Seventh Claim including:

a. Preventing defendants from making and publishing the defamatory statements or any iteration of the defamatory statements as set forth above and herein;

Complaint and
Demand for Jury Trial

b. Ordering defendants to retract the defamatory statements as set forth above and herein;

c. Ordering defendants to direct any, and all, websites that defendants posted the defamatory statements as set forth above and herein, to delete he defamatory statements;

4. Award plaintiff his actual damages;

5. Award plaintiff his costs, attorneys fees, investigatory fees and expenses to the fullest extent provided by law;

6. Award punitive and exemplary damages against defendant and in favor of plaintiff in the sum of $10,000,000.00 by reason of defendants', and each of them, malice, hatred, ill-will, despicable and intentional acts.

7. Awarding plaintiff such additional and further relief as the Court deems just and proper.

Dated:  Honolulu, Hawai'i May 22, 2019

UTZURRUM LAW OFFICES, A.P.C.


By: _____ /s/ Joe Utzurrum _____

Joe Utzurrum, Attorney for plaintiff, DANNY GALLAGHER

Complaint and
Demand for Jury Trial

UTZURRUM LAW OFFICES, A.P.C.
Joe Utzurrum, Esq.
7 Waterfront Plaza
500 Ala Moana Boulevard, Suite 400
Honolulu, Hawai'i 96813
Tele 808.587.7070
Email joe@ulawoffices.com

11620 Wilshire Blvd., Suite 900
Los Angeles, California 90025
Tele 310.887.1837

Attorneys for Plaintiff, DANNY
GALLAGHER

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| DANNY GALLAGHER, | ) CIVIL NO.: |
| | ) |
| Plaintiff, | ) DEMAND FOR JURY TRIAL |
| | ) |
| vs. | ) |
| | ) |
| EMILEE SALDAYA, RACHAEL AUGHENBAUGH, | ) |
| | ) |
| Defendants. | ) |

Plaintiff, DANNY GALLAGHER, hereby, by and through its counsel of record, request and demand that the case and matters therein be tried in front of a jury.

Complaint and
Demand for Jury Trial

Dated:  Honolulu, Hawai'i May 22, 2019

UTZURRUM LAW OFFICES, A.P.C.

By: _____/s/ Joe Utzurrum_____
Joe Utzurrum, Attorney for plaintiff, DANNY
GALLAGHER

Complaint and
Demand for Jury Trial